IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REDNER'S MARKETS, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-11-1864 |
| JOPPATOWNE G.P. LIMITED PARTNERSHIP | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On January 24, 2013, Judge Legg of this Court found that Defendant Joppatowne G.P. Limited Partnership ("Defendant" or "Joppatowne") had violated a restrictive use covenant in the lease agreement between Joppatowne and the Plaintiff Redner's Markets, Inc. ("Plaintiff" or "Redner's"). Thereafter, Redner's filed the subject Motion for Permanent Injunction (ECF No. 141), seeking an order permanently enjoining Joppatowne from continuing to violate the restrictive use covenant. The proposed order (ECF No. 147) would require Joppatowne to cause two farmer's market stalls that were found to violate the restrictive covenant—All Fresh Quality Seafood & Produce and Lapp's Fresh Meat—to be removed from the Joppatowne Plaza Shopping Center. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff's Motion for Permanent Injunction (ECF No. 141) is GRANTED with respect to these two stalls.

1

BACKGROUND

The following facts were found by Judge Legg of this Court in the Memorandum Opinion issued on January 24, 2013. *See* Jan. 24, 2013 Mem. Op., ECF No. 133. Plaintiff Redner's Markets, Inc. ("Plaintiff" or "Redner's") is a Pennsylvania corporation with its principal place of business in Reading, Pennsylvania. Redner's operates a chain of grocery stores in the mid-Atlantic region. At issue in this case is the Redner's grocery store located at the Joppatowne Plaza Shopping Center in Joppa, Maryland.

On November 23, 2005, Redner's entered into a twenty-year lease agreement (the "Redner's Lease") with the owner and landlord of the Joppatowne Plaza Shopping Center, Defendant Joppatowne G.P. Limited Partnership ("Defendant" or "Joppatowne"), a Maryland limited partnership. The Redner's Lease contains a restrictive covenant preventing Joppatowne from leasing property within a five mile radius of the shopping center to be used as a "food supermarket, butcher shop, seafood shop, or grocery store." *See* Redner's Lease, Art. XIII, 13.01(a)(i), Addendum to Jan. 24, 2013 Mem. Op. Despite that covenant, Joppatowne permitted an Amish Farmer's Market,[1] as well as two vendor stalls (the "Vendor Stalls"), both of which compete with Redner's, to operate on the leased premises starting on March 17, 2011.[2]

---

[1] The Amish Farmer's Market contains seven stalls, which are separately owned and operated: Dutch Delights; Dutch Pantry Fudge; Kreative Kitchen; Lapp's Fresh Meats; King's Cheese & Deli; Beiler's BBQ; and Beiler's Baked Goods. An eighth stall, All Fresh Quality Seafood & Produce, is located outside the enclosure.

[2] Specifically, Joppatowne entered into a ten-year lease with JTF, LLC ("JTF"), a Maryland corporation created to do business at the Joppatowne Plaza Shopping Center. JTF leases space to the Amish Farmer's Market. Because Joppatowne and JTF realized they were running the risk that the Amish Farmer's Market would violate the restrictive covenant in the Redner's Lease, Joppatowne agreed to defend and indemnify JTF in the event of a lawsuit.

2

On May 10, 2011, Redner's sued Joppatowne for breach of the restrictive covenant in the United States District Court for the Eastern District of Pennsylvania. The case was transferred to this Court on July 7, 2011. Judge Legg of this Court, who was originally assigned to this case, decided to bifurcate the issues for trial. The first stage of trial would proceed on issues of liability and "traditional theories of damages (e.g., lost profit; lost sales)," while "more esoteric damage theories (e.g., diminution of value; constructive trust)" would be considered at a later stage. *See* Sept. 30, 2011 Letter Order, ECF No. 42; Nov. 29, 2011 Letter Order, ECF No. 62.

The first stage of the bifurcated bench trial proceeded over seven days from December 2011 to August 2012. On January 24, 2013, Judge Legg issued an opinion resolving some, but not all, of the issues presented at the first stage of trial. *See* Jan. 24, 2013 Mem. Op. Specifically, Judge Legg found that two of the Amish Farmer's Market Stalls, All Fresh Quality Seafood & Produce and Lapp's Fresh Meats, were prohibited by the restrictive covenant, as the first constituted a seafood shop and the second was a butcher shop. *See id.* at 30-32. Judge Legg also found that three stalls—Dutch Pantry Fudge, Kreative Kitchen, and Dutch Delights—did not violate the restrictive covenant. *See id.* at 32-35. Finally, Judge Legg left certain issues unresolved—namely, whether Beiler's BBQ, Beiler's Baked Goods, King's Cheese & Deli, and the two Vendor Stalls violated the restrictive covenant of the Redner's Lease.[3] On the same day that Judge Legg rendered his Opinion, the case was reassigned to the undersigned of this Court, who has certified familiarity with the record and

---

[3] While these issues were initially referred to a United States Magistrate Judge for report and recommendation, *see* Order of Reference, ECF No. 135, the Order of Reference was later withdrawn and vacated. *See* May 16, 2013 Letter Order, ECF No. 154. The outstanding issues on which the first stage of the bench trial proceeded will be decided by this Court after further trial proceedings.

3

that the case can proceed without prejudice to the parties under Rule 63 of the Federal Rules of Civil Procedure. *See* May 23, 2013 Letter Order, ECF No. 155.

After Judge Legg's Opinion was issued, Redner's filed the subject Motion for Permanent Injunction (ECF No. 141), seeking an order permanently enjoining Joppatowne from continuing to violate the restrictive use covenant. Specifically, the proposed order submitted by Redner's would require Joppatowne to cause the two stalls already found to be in violation of the restrictive covenant, All Fresh Quality Seafood & Produce and Lapp's Fresh Meats, as well as any seafood shop or butcher shop, to be removed from the Amish Farmer's Market at the Joppatowne Plaza Shopping Center. *See* Am. Proposed Order, ECF No. 147. In rebuttal, Joppatowne contends that the previous Opinion of Judge Legg of this Court made none of the factual findings or legal conclusions required to lay the foundation for an award of permanent injunctive relief. For the reasons stated below, the Motion for Permanent Injunction (ECF No. 141) filed by Redner's is GRANTED.

## ANALYSIS

To determine whether a permanent injunction should issue against Joppatowne, this Court must confront two questions: first, whether state or federal law governs the remedy of a permanent injunction when the Court sits in diversity pursuant to 28 U.S.C. § 1332; and second, whether Redner's has made the necessary showings to obtain a permanent injunction. Arguing that state law applies, Redner's claims that it has demonstrated the requisite elements under Maryland law for obtaining a permanent injunction. Joppatowne suggests that federal law applies and therefore Redner's has failed to show the four factors needed to obtain injunctive relief.

I. **Maryland Law Governs the Remedy of Injunctive Relief in This Case**

The fundamental dispute between the parties is whether Redner's must prove irreparable harm to obtain a permanent injunction. Under Maryland law, a permanent injunction that is sought to enforce a restrictive covenant may issue "with no requirement that irreparable injury be shown." *Chestnut Real Estate P'ship v. Huber*, 811 A.2d 389, 399-401 (Md. Ct. Spec. App. 2002). By contrast, the federal law governing permanent injunctions requires that the plaintiff demonstrate four factors, one of which is that it has suffered an irreparable injury.[4]

In this case, Judge Legg preliminarily concluded that state law would govern the request for a permanent injunction. After conducting several days of the bench trial, Judge Legg stated in a Letter Order to the parties that Redner's would be entitled to injunctive relief "to enforce the restrictive covenant in the event of breach." *See* Feb. 29, 2012 Letter Order, ECF No. 92. "Redner's need not demonstrate irreparable harm in order to obtain injunctive relief," Judge Legg explained, because "in diversity cases, state law governs the substantive issues, including whether a district court may issue a permanent injunction." *See id.* (citing *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 633 (7th Cir. 2005); *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 652 F. Supp. 2d 1252, 1263 (M.D. Fla. 2009)). Under Maryland law, Judge Legg emphasized, "the plaintiff need not prove irreparable harm as a condition of obtaining a permanent injunction for violation of a restrictive covenant." *Id.* (citing *Chestnut*

---

[4] As the Supreme Court recited in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), a plaintiff seeking a permanent injunction must demonstrate four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

*Real Estate*, 811 A.2d at 401).

Under the law of the case doctrine, a decision by a court "should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). However, the law of the case doctrine does not necessarily apply here, as Judge Legg stated in his Letter Order that his conclusion was "tentative and subject to change depending on the remaining evidence and closing argument." Feb. 29, 2012 Letter Order. This Court will therefore assume without deciding that Judge Legg's preliminary conclusion is not the law of the case.

Though not necessarily binding through law of the case doctrine, Judge Legg's analysis of the issue nevertheless holds true. While it is on the whole a complicated issue whether federal or state law governs the procedure for issuing certain injunctive remedies,[5] the law in this Circuit is relatively clear. Indeed, the United States Court of Appeals for the Fourth Circuit concluded in *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988), that a federal court sitting in diversity should apply state law to the issuance of a preliminary injunction, stating, "[t]here is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions." *See also McLeod v. Stevens*, 617 F.2d 1038, 1041 (4th Cir. 1980) (finding that the remedy to which a plaintiff is entitled is "a question of substance that is governed by state law" (citing *Markham v. City of Newport News*, 292 F.2d 711, 718 (4th Cir. 1961)).

---

[5] This question arises out of the Supreme Court's decision in *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938), in which the Court held that "[t]here is no federal general common law," and therefore a federal court sitting in diversity should apply the law of the state in which it sits. *Erie* and its progeny have "generated considerable disagreement," especially on the question whether *Erie* compels a district court to apply state law to the remedy of a permanent injunction. *E.I. DuPont de Nemours & Co. v. Kolon Indus.*, 849 F. Supp. 2d 691, 700 (E.D. Va. 2012).

6

Despite this precedent, Joppatowne contends that more recent Fourth Circuit decisions indicate a rejection of the court's earlier holding in *Capital Tool*. Specifically, Joppatowne points to the Fourth Circuit's decision in *Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532 (2007), in which the Fourth Circuit commented on the United States Supreme Court's decision in *eBay v. MercExchange*, 547 U.S. 388 (2006). In *eBay*, the Supreme Court had reversed a decision by the United States Court of Appeals for the Federal Circuit, because the appellate court disregarded the traditional four-factor test for a preliminary injunction and instead applied a rule, unique to patent disputes, that a permanent injunction "automatically follows a determination that a copyright has been infringed." *Phelps*, 492 F.3d at 543 (citing *eBay*, 547 U.S. at 392-93). The Fourth Circuit noted that in rejecting the Federal Circuit's application of its own permanent injunction rule, *eBay* "reaffirmed the traditional showing that a plaintiff must make to obtain a permanent injunction *in any type of case*." *Id.* (emphasis added). Relying on the assertion that federal law governing injunctive relief applies in "any type of case," *id.*, Joppatowne insists that the four-factor test under *eBay* and *Winter*—and not state law—should apply in this case.

The language in *Phelps* that Joppatowne seizes on is admittedly broad. Reading *Phelps* in context, however, it becomes clear that the Fourth Circuit did not announce a new rule regarding *Erie* doctrine and abrogating *Capital Tool*. In *eBay*, the Supreme Court confronted a preliminary injunction rule specific to patent law. 547 U.S. at 391. The question before the Court was the "appropriateness" of that rule, as it departed from the traditional four-factor test under federal law.[6] By describing the Court's holding in *eBay* as applying in "any type of

---

[6] That four-factor test is set forth in note 4 *supra*.

7

case," the Fourth Circuit was likely referring to the Supreme Court's refusal to allow a departure from the traditional injunction test in the context of patent law or any other federal subject matter. *Phelps*, 492 F.3d at 543. Indeed, a full recitation of the sentence on which Joppatowne relies bolsters this conclusion: "The Supreme Court reaffirmed the traditional showing that a plaintiff must make to obtain a permanent injunction in any type of case, including a patent or copyright case." *Id.*

There is no indication in the Fourth Circuit's opinion that *Phelps* was meant to abrogate the holding in *Capital Tool*. In fact, because the case in *Phelps* was based on federal copyright law, *id.* at 532, the *Erie* question in *Capital Tool* did not arise in *Phelps*. Moreover, nothing in the *eBay* opinion dictates that federal permanent injunction law should apply to a case in which a federal court sits in diversity. *See* 547 U.S. 388. In short, neither the Supreme Court in *eBay* nor the Fourth Circuit in *Phelps* confronted this question regarding *Erie* doctrine, and this Court is unwilling to grant Joppatowne's conjecture that *Capital Tool* has since been abrogated.

The District Court for the Eastern District for Virginia addressed a nearly identical argument to the one raised by Joppatowne in this case. *See E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 705 (E.D. Va. 2012). Because *Phelps* "did not mention *Erie*," the district court assigned little value, for purposes of the *Erie* doctrine, to the Fourth Circuit's statement in *Phelps* that the four-factor showing under *eBay* applies "in any type of case." *Id.* The district court also noted that in cases decided after *eBay*, several courts have continued to apply "state substantive law to determine whether a permanent injunction should issue." *Id.* at 706 (citing *Deer Valley Resort Co. v. Christy Sports, L.L.C.,* No. 2:07-cv-

904, 2010 WL 1065940, at *4 (D. Utah Mar. 23, 2010); *Midland Funding LLC v. Brent,* No. 3:08CV1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009); *Sensormatic Elecs. Corp. v. TAG Co. U.S.*, 632 F. Supp. 2d 1147 (S.D. Fla. 2008)).

For all of these reasons, this Court follows *Capital Tool*, in which the Fourth Circuit held that a federal court sitting in diversity should apply state substantive law to the issuance of a preliminary injunction. 837 F.2d at 172. Accordingly, as Judge Legg of this Court concluded earlier, Maryland law applies to the permanent injunction sought by Redner's in this case.

## II. Standard of Review for Permanent Injunction under Maryland Law

A permanent injunction "normally will not be granted unless the petitioner demonstrates that it will sustain irreparable harm as a result of the alleged wrongful conduct." *El Bey v. Morrish Sci. Temple of Am., Inc.*, 765 A.2d 132, 140 (Md. 2001). Where the permanent injunction is sought to enforce a restrictive covenant, however, the injunction may issue "with no requirement that irreparable injury be shown." *Chestnut Real Estate P'ship v. Huber*, 811 A.2d 389, 399-401 (Md. Ct. Spec. App. 2002).

In general, the Court of Appeals of Maryland has stated that a permanent injunction is an appropriate remedy for the violation of a restrictive covenant, because "[w]here specific performance is proper, equity may accomplish the same result permanently . . . by use of injunction." *Colandrea v. Wilde Lake Cmty. Ass'n*, 761 A.2d 899, 912 (Md. 2000) (citing *Lissau v. Smith*, 138 A.2d 381, 387 (Md. 1958)). Because a permanent injunction to enforce a restrictive covenant is much like a request for specific performance, Maryland courts have held that "where a mandatory injunction is sought to enforce a restrictive covenant," the rule

9

requiring a showing of irreparable harm does not apply. *Chestnut Real Estate*, 811 A.2d at 398-99. Indeed, the Court of Special Appeals of Maryland in *Chestnut Real Estate* reviewed cases in which the Maryland Court of Appeals permitted the issuance of injunctive relief "to remedy a violation of a restrictive covenant absent a showing of irreparable harm." *See id.* 398-402. Accordingly, to obtain a permanent injunction to enforce a restrictive covenant, a plaintiff need only make the showing "required to obtain specific performance." *Chestnut Real Estate*, 811 A.2d at 401. Where a court finds that a restrictive covenant has been breached, a permanent injunction may be granted "on the basis of the strength of the circumstances and equities of each party." *Id.* at 398.

### III. Injunctive Relief Is Appropriate

Injunctive relief should issue in this case, because Joppatowne is in violation of the restrictive covenant and the equities favor Redner's. There is no question that Judge Legg of this Court held the Redner's Lease to be valid and enforceable. *See* Jan. 24, 2013 Mem. Op. 17-19, 30-32; *see also* Feb. 29, 2012 Letter Order. There is likewise no question that Joppatowne was found to be in breach of the restrictive covenant with respect to two stalls. *See* Jan. 24, 2013 Mem. Op. 30-32. Specifically, Redner's permitted a seafood shop, All Fresh Quality Seafood & Produce, and a butcher shop, Lapp's Fresh Meats, to operate at the Joppatowne Plaza Shopping Center in contravention of the restrictive covenant. *Id.* Accordingly, Redner's has demonstrated a breach of a valid contract, and specific performance may be decreed "as a matter of course," so long as the equities favor the plaintiff. *See Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Area*, 386 A.2d 1216, 1233-34 (Md. 1978); *see also Chestnut Real Estate*, 811 A.2d at 398.

10

In this case, the equities favor Redner's. Maryland law strongly favors upholding the intent of contracting parties through enforcement of contractual terms. *See Md.-Nat'l*, 386 A.2d at 1229. For this reason, enforcement of the restrictive covenant should be denied "only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement of the contested term." *Id.* (citation and internal quotation marks omitted). Redner's soundly argues that based on Maryland's clear preference for protecting the intent of contracting parties, the injunction should issue. Because this Court found that the Redner's Lease was valid and enforceable and that Redner's had breached the restrictive covenant, this Court finds that the equities favor Redner's and the injunction should issue.

Joppatowne suggests that the relief Redner's requests would require Joppatowne to do something it has no right or power to do. *See* Resp. 19, ECF No. 145. Specifically, Joppatowne notes that it entered into an indemnity agreement with JTF, the company that leased space for the Amish Farmer's Market. As part of that agreement, Joppatowne stated that it would not take action against JTF for a breach of the restrictive covenant in the Redner's Lease "unless or until a Court rules that there is a violation of these covenants." *See* Joint Trial Ex. 18, Bates No. 000028; *see also* Joint Trial Ex. 20, Bates No. 000038 ("[I]n the event there is a good faith dispute . . . Landlord shall defer exercise of remedies until a court has agreed that such use is a violation and if the court so determines, Tenant shall have thirty days from said determination to cure the violation.").

As to two stalls, Redner's succeeded in proving that the use of an Amish Farmer's Market by Joppatowne constituted a violation of the Redner's Lease. This decision was rendered nearly five months ago. *See* Jan. 24, 2013 Mem. Op., ECF No. 133. Because this Court found a violation of the restrictive covenant, the contract between Joppatowne and JTF indicates that Joppatowne may now take action against JTF to remove the infringing stalls. Accordingly, Joppatowne presents no reason for departing from the "law's traditional interest in protecting the expectations of the parties," *Md.-Nat'l*, 386 A.2d at 1229, and the Motion for Permanent Injunction (ECF No. 141) filed by Redner's is GRANTED.

## CONCLUSION

For the reasons stated above, the Motion for Permanent Injunction filed by the Plaintiff Redner's Markets, Inc. (ECF No. 141) is GRANTED as to the two stalls found to infringe the restrictive covenant. It is hereby ORDERED that Joppatowne G.P. Limited Partnership shall cause All Fresh Quality Seafood & Produce and Lapp's Fresh Meats to be removed from the Amish Farmer's Market at Joppatowne Plaza Shopping Center within ten days.[7] Noncompliance with this Order WILL RESULT in a fine, the amount of which will be determined by this Court if the occasion to assess such fine arises. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) ("When a court employs the extraordinary remedy of an injunction, it directs the conduct of a party, and does so with the backing of its full coercive powers." (internal citation and quotation marks omitted)).

---

[7] Joppatowne states that All Fresh Quality Seafood & Produce has since closed, and thus the subject Motion is moot as to that stall. To the contrary, Redner's is entitled to an order of injunctive relief referencing both vendors, as each was found to infringe the restrictive covenant, and there is no reason to assume that the violation will not be repeated.

A separate Order follows.

Dated: June 13, 2013               _____/s/_____
                                   Richard D. Bennett
                                   United States District Judge