IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| REDNER'S MARKETS, INC. | * |
| Plaintiff, | * |
| v. | * Civil Action No.: RDB-11-1864 |
| JOPPATOWNE G.P. LIMITED PARTNERSHIP, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

On July 11, 2013, this Court entered its Memorandum Opinion and Order (ECF Nos. 179 & 180) granting judgment in favor of the Plaintiff Redner's Markets, Inc. ("Plaintiff" or "Redner's") against Defendant Joppatowne G.P. Limited Partnership ("Defendant" or "Joppatowne") for injunctive relief as to farmer's market stalls Lapp's Fresh Meats and All Fresh Quality Seafood & Produce that were found to be in breach of a restrictive use covenant in the lease agreement between the parties, with no monetary damages. In that Memorandum Opinion and Order, this Court further granted judgment in favor of the Defendant against Plaintiff as to the remaining breach of restrictive use covenant claims. Now pending before this Court is the Plaintiff's Motion to Amend Findings of Fact and Conclusions of Law and for a New Trial Pursuant to Federal Rules of Civil Procedure 52 and 59 and supporting memorandum (ECF Nos. 185 & 185-1) ("Motion"). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the Plaintiff's Motion is

1

DENIED in all respects, except that it is GRANTED to the extent the Plaintiff is entitled to nominal damages of $2.00.

## BACKGROUND

The background facts of this action were fully set forth in this Court's Memorandum Opinion of July 11, 2013 (ECF No. 179). To summarize, the Plaintiff filed this action against its landlord, Defendant, alleging violations of a restrictive use covenant in a commercial lease. Redner's initially contended that by permitting a group of ten farmer's market stalls to operate at the Joppatowne Plaza Shopping Center, Joppatowne breached a covenant not to lease to any other grocery stores within a five-mile radius of the shopping center. In late 2011, a bench trial on the issues of liability and traditional damage theories commenced. The bench trial was conducted by Judge Legg of this Court over seven nonconsecutive days, from December 5, 2011 to August 14, 2012. On January 24, 2013, Judge Legg issued an opinion in which he found that two of the challenged stalls infringed the restrictive use covenant while three other stalls did not. *See* Jan. 24, 2013 Mem. Op. 30-35, ECF No. 133. Judge Legg reserved the issues of whether the remaining five stalls infringed, as well as the issue of Redner's damages, for a report and recommendation by a United States Magistrate Judge. *See* Jan. 24, 2013 Mem. Op. 24-26; Order of Reference, ECF No. 135. The case was thereafter reassigned to the undersigned.[1] After Joppatowne objected to Judge Legg's Order of Reference, the undersigned withdrew and vacated it. *See* May 16, 2013 Letter Order, ECF No. 154.

---

[1] In anticipation of Judge Legg's retirement from the United States District Court for the District of Maryland on February 6, 2013, this case was transferred to the undersigned on January 24, 2013. After the case was reassigned, the undersigned certified familiarity with the record pursuant to Rule 63 of the Federal Rules of Civil Procedure. *See* May 23, 2013 Letter Order, ECF No. 155.

Based on Judge Legg's finding of liability as to the two infringing stalls, Redner's filed a Motion for Permanent Injunction (ECF No. 141), seeking an order permanently enjoining Joppatowne from continuing to violate the restrictive use covenant. Specifically, Redner's asked that Joppatowne be required to cause the two infringing farmer's market stalls—Lapp's Fresh Meats and All Fresh Quality Seafood & Produce ("All Fresh")—to be removed from the Joppatowne Plaza Shopping Center. Applying Maryland law, this Court decided that a permanent injunction was warranted as to Lapp's Fresh Meats and All Fresh, because Joppatowne was found to have violated the restrictive use covenant and the equities favored Redner's. *See* June 13, 2013 Mem. Op. 10-12, ECF No. 158. Joppatowne moved to stay the enforcement of the Permanent Injunction Order, and that motion was denied. *See* June 20, 2013 Letter Order, ECF No. 168; *see also* Fourth Circuit Order, ECF No. 169 (denying Joppatowne's motion for a stay of permanent injunction pending appeal).

This Court then scheduled a second stage of the bench trial for July 1 and 2, 2013, with the following issues remaining to be tried: (1) whether Joppatowne breached its restrictive use covenant as to the five farmer's market stalls for which Judge Legg rendered no opinion, and (2) whether Redner's is entitled to damages for lost profits caused by the infringing stalls. However, on the morning of trial on July 1, 2013, Redner's abandoned its breach of contract claim relating to four of the five remaining stalls.[2] As to the remaining stall, namely Beiler's Baked Goods, Redner's maintained its claim of liability on the theory that Beiler's Baked Goods was an impermissible retail operator under section 13.01(a)(ii)(2) of the lease because its "in-store sales area" represents greater than 25% of the stall's "Gross

---

[2] Those stalls are Beiler's BBQ, King's Cheese & Deli, and the two "Vendor Stalls."

Floor Area," in violation of the restrictive use covenant ("the 25% rule"). However, the Plaintiff indicated that it would pursue only injunctive relief as to that stall. Accordingly, the issue of lost profits damages pertained only to the two stalls for which this Court, per its Memorandum Opinion of January 24, 2013, already found liability.

Redner's called two witnesses—Gary O'Brien, Vice President of Perishable Retail Operations for Redner's, who testified regarding lost profits allegedly caused by the two infringing stalls; and architectural expert Jonathan McGowan, who testified to the gross floor area and in-store sales areas of the remaining challenged stall. Joppatowne called its expert architect Shellie Curry, as well as Robert E. Fowler, Esq., Joppatowne's corporate representative. Based on the exhibits introduced into evidence, the testimony of the four witnesses, the written submissions of the parties, and the oral arguments of counsel, this Court made the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, on the remaining issues of liability as to Beiler's Baked Goods and traditional damages as to the infringing stalls, Lapp's Fresh Meats and All Fresh Quality Seafood & Produce. First, this Court concluded that Defendant did not breach the lease by permitting Beiler's Baked Goods to operate. Based on the testimony of the Defendant's expert Curry, this Court concluded that Beiler's Baked Goods had a Gross Floor Area of 1,116.75 square feet, of which 236.5 square feet was "in-store sales area." Mem. Op. at 8-13, 17-18. Using those figures, this Court found that the in-store sales area represented only 21.18% of the Gross Floor Area, and that the stall did not infringe of the lease's 25% rule. Second, this Court held that the Plaintiff failed to prove lost profits damages with reasonable certainty as to the infringing stalls. Although the Plaintiff

4

presented calculations of lost profits during the period at issue, this Court concluded that the Plaintiff was not entitled to an award of lost profits because the Plaintiff had not adequately shown that the Defendant's breaches of the restrictive use covenant caused lost profits, and the Plaintiff's damages calculations were based on guesswork and speculation.

On August 8, 2013, the Plaintiff timely filed the pending Motion, pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

Rule 52(b) of the Federal Rules of Civil Procedure provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). Rule 59(e) of the Federal Rules of Civil Procedure provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a judgment may be amended in only three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)), *accord Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010). Rule 59(e) does not permit a party to "raise arguments which could have been raised prior to the issuance of the judgment," nor does it enable a party to "argue

a case under a novel legal theory that the party had the ability to address in the first instance."[3] *Pac. Ins. Co.*, 148 F.3d at 403.

Moreover, "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment." *Id.* Such motions do not authorize a "game of hopscotch," in which parties switch from one legal theory to another "like a bee in search of honey." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). In other words, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995)). Where a party seeks reconsideration on the basis of clear error, the earlier decision cannot be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, Nos. 92-2355, 92-2437, 1995 WL 520978 at *5 n.6 (4th Cir. Sept. 5, 1995)). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

Rule 59(a) allows that, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

---

[3] This Court has interpreted Rule 52(b) to require a showing of a "clear error of law" or "manifest injustice" that is coextensive with the requirements of Rule 59(e), in order to warrant amendment of the court's findings. *See Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, No. AW-11-1714, 2011 WL 5995186, at *2 (D. Md. Nov. 29, 2011) (declining to make additional findings pursuant to Rule 52 or to amend judgment under Rule 59, reasoning that the Rule 59 standard stated in *Pacific Insurance Co.*, 148 F.3d at 403, was not met).

6

Fed. R. Civ. P. 59(a)(2). "Because every litigant is entitled to one fair trial, not two, the decision of whether to grant or deny a motion for a new trial lies within the discretion of the district court." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 599 (D. Md. 2012) (internal citations and quotation marks omitted). Granting a new trial is not warranted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2013 WL 4603006, at *1 (D. Md. Aug. 28, 2013).

## **ANALYSIS**

Plaintiff has not met the high bar it faces to succeed on its Motion. No clear error of law or manifest injustice has been identified in this Court's Order. The Plaintiff simply rehashes arguments that were made at trial, and rejected by this Court. Thus, the Plaintiff has not demonstrated the grounds required for reconsideration under Rule 52 or 59. Nevertheless, Plaintiff's main arguments are considered in the following discussion.

The Plaintiff first argues that this Court erred by failing to consider evidence of damages other than lost profits, and requests a new trial to allow presentation of such evidence. In *Freedman v. Seidler*, the Court of Appeals of Maryland recognized two measures by which to calculate damages stemming from the breach of a restrictive use covenant: (1) the difference between the value of the lease with the covenant broken compared to the lease's value with the covenant unbroken; and (2) lost profits caused by the breach that could be proven "by competent evidence satisfactory to the Court." 194 A.2d 778, 782-83 (Md. 1963). The Maryland high court further held "that loss of profits is the governing factor in

7

both of the above measures." *Id.* Thus, a plaintiff who cannot prove lost profits with "competent evidence" also cannot prove any diminution in the value of the lease.

In this case, the Plaintiff has not presented competent evidence that is satisfactory to this Court of any profits lost as a result of the two breaches of the restrictive use covenant. The Plaintiff relied on the average of its weekly sales for the twelve-month period preceding the breaches as a baseline for its damages calculation. This technique did not adequately account for alternative factors, such as the opening of other competitors in the area, and thus could not be established as a reliable starting point. Moreover, the Plaintiff did not present evidence of the infringing stalls' sales, or adequately calculate the percentage of lost profits attributable to the Defendant's actions, as opposed to competition from other vendors in the area. While the Plaintiff correctly points out in its Motion that it is not required to prove actual damages with "mathematical precision in fixing the exact amount," *David Sloane, Inc. v. Stanley G. House & Associates, Inc.*, 532 A.2d 694, 696 (Md. 1987), the Plaintiff was required to show more than was presented at trial. At the very least, sales figures for Lapp's Fresh Meats and All Fresh were necessary to show that the Defendant's breaches of the restrictive use covenant caused lost profits, and evidence of any percentage of loss caused thereby was needed to support a calculation of the amount of damage to any reasonable degree of certainty. Without such evidence, the Plaintiff asks this Court to resort to impermissible speculation and guesswork.

Having held that the Plaintiff failed to prove lost profits, the "governing factor" of a calculation of diminution of lease value could not be present. *Freedman*, 194 A.2d at 782. Thus, this Court held in the Memorandum Opinion of July 11, 2013, that because the

8

Plaintiff had not proven any lost profits damages, the issue of "more esoteric damage theories," *e.g.*, diminution of the value of its leasehold interest and constructive trust, "no longer have any bearing in this action." Mem. Op., ECF No. 179 at 2-3 n.3. No trial on the issue of diminution of lease value is necessary. The Plaintiff's citations to cases from other jurisdictions are unavailing to its position. Maryland law controls, and the Plaintiff points to no change in the applicable standard that the Court of Appeals stated in *Freedman*. 194 A.2d at 782-83; *see also Pac. Ins. Co.*, 148 F.3d at 403 (listing an intervening change in controlling law as a possible circumstance warranting amendment of judgment).

Moreover, no further consideration is needed as to the Plaintiff's "constructive trust" theory of damages. A constructive trust is not a method of calculating damages, but rather a means by which to hold an identifiable amount available for recovery by the aggrieved party. *See Porter v. Zuromski*, 6 A.3d 372, 380 (Md. Ct. Spec. App. 2010) (affirming imposition of a constructive trust for undivided one-half interest in the subject property as tenants in common where plaintiff's name was not on the house's title but she had paid half of down payment, mortgage payments, and repairs). In this case, the Plaintiff has failed to identify any such amount of actual damages that could be held in a constructive trust. For those reasons, the Plaintiff's Motion for a new trial on alternative damages measures is denied.

Second, the Plaintiff reargues its position that this Court improperly defined the lease term "in-store sales area." The lease does not define "in-store sales area," therefore this Court construed the term according to its clear and unambiguous meaning. Judge Legg, in the January 24, 2013 Memorandum Opinion, held that "in-store sales area" included display cases, shelves, and racks where merchandise is presented to customers. ECF No. 133 at 25-

9

26. Judge Legg further held that the lease did not use the term in a way that would support a more expansive definition of "in-store sales area" that would include spaces such as "counter space used for cash registers" or the "floor area on opposite sides of a display case where customers and employees stand while discussing merchandise." *Id.*

Judge Legg's definition of "in-store sales area" does not warrant the extraordinary remedy sought by the Plaintiff in its Motion. *TFWS, Inc.*, 572 F.3d at 194. This Court held that the term was clear and unambiguous, and that parol evidence was unnecessary to interpret its meaning. Now, the Plaintiff simply disagrees with this Court's conclusion. Because a motion to amend the court's findings "may not be used to relitigate old matters," the Plaintiff's assertions do not meet the exacting requirements for relief under Rule 59. *See Pac. Ins. Co.*, 148 F.3d at 403 (citation omitted).

Similarly, the Plaintiff argues that this Court miscalculated the Gross Floor Area of Beiler's Baked Goods stall, resulting in the erroneous finding that Beiler's Baked Goods did not violate the 25% rule. The Plaintiff urges this Court to amend its factual finding that Beiler's Baked Goods had a Gross Floor Area of 1,116.75 square feet, in favor of the testimony of Menno Beiler during the first stage of trial, who calculated the Gross Floor Area as 1,060 square feet. First, as discussed above in the context of this Court's legal conclusion regarding the definition of in-store sales area, Plaintiff's mere disagreement with the finding of fact regarding Gross Floor Area is not a cognizable basis to amend the judgment. *Pac. Ins. Co.*, 148 F.3d at 403 (describing the limited circumstances that warrant amending the court's findings) (citation omitted). Moreover, even if this Court were to amend its factual finding to adopt Mr. Beiler's figure, the 236.5 square feet of in-store sales

area would occupy only 22.31% of the Gross Floor Area. The same goes for the Plaintiff's argument that this Court should have accepted the opinion of Plaintiff's expert McGowan that the Gross Floor Area is 952 square feet. As fully explained in the Memorandum Opinion of July 11, 2013, if the Gross Floor Area of Beiler's Baked Goods was found to be 952 square feet, the 236.5 square feet of in-store sales area comprises only 24.84% of the total. By any of these measures, Beiler's Baked Goods does not have an in-store sales area greater than 25% of its Gross Floor Area, and is therefore not in breach of the restrictive use covenant. Thus, the Plaintiff has not met the high burden to show that amendment of this Court's factual findings is warranted.

The Plaintiff next argues that this Court should amend its finding that Beiler's BBQ stall is not a butcher shop. Judge Legg concluded in the January 24, 2013 Memorandum Opinion that Beiler's BBQ is not a butcher shop. In advance of the second stage of the trial in July of 2013, there was no mention in the Joint Pretrial Order of Plaintiff's intention to argue that Beiler's BBQ is a butcher shop. In addition, counsel agreed as to the issues remaining for trial on July 1, 2013. Tr. of Bench Trial Day 8, ECF No. 176 at 7-11. At trial, this Court explicitly asked counsel to clarify whether the Plaintiff would argue that Beiler's BBQ infringed the restrictive use covenant:

> THE COURT: Well, where are we as to Beiler's BBQ, King's Cheese & Deli, and two vendor stalls?
>
> MR. MIRAVICH: We are not pursuing them on the 25% rule, Your Honor.
>
> THE COURT: Just translate that for me. What are we proceeding on? You're saying you're not proceeding with them as to the 25% rule. Are you proceeding with them in any fashion?
>
> MR. MIRAVICH: No, Your Honor.

> THE COURT: Okay. Then just so the record is clear, to translate this into ordinary English, with respect to Beiler's BBQ, King's Cheese & Deli, and two vendor stalls, you are no longer proceeding with any breach as to those stalls.
>
> MR. MIRAVICH: Correct, Your Honor.

*Id.* at 7 (alterations as to form made for consistency). In sum, the Plaintiff argued that Beiler's BBQ is a butcher shop at trial, and Judge Legg rejected that claim. Subsequently, the Plaintiff made clear that it was no longer pressing that issue. Furthermore, the finding that Beiler's BBQ is not a butcher shop does not work a manifest injustice. *Pac. Ins. Co.*, 148 F.3d at 403. The mere sale of raw chicken at Beiler's BBQ does not itself make the stall a butcher shop. Additionally, the Plaintiff's argument that there were plans to sell other raw animal products at Beiler's BBQ in the future is irrelevant to the question of whether the stall is now a butcher shop. Thus, there is no reason to disturb Judge Legg's finding that Beiler's BBQ is not a butcher shop and did not breach the restrictive use covenant.

Finally, the Plaintiff argues that, because the Defendant was adjudged to have breached the restrictive use covenant as to two of the stalls, this Court should amend the Judgment to award "at least some damages." ECF No. 185-1 at 27 (citing *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 625 (D. Md. 2001), *aff'd per curiam*, 30 F. App'x 117 (4th Cir. 2002)). To recover for actual damages under Maryland law, a plaintiff must prove: (1) that the defendant's breach caused the loss; (2) the defendant could have reasonably foreseen that a loss of profits would be a probable result of breach at the time the defendant executed the contract; and (3) the lost profits can be proved with reasonable certainty. *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 389 A.2d 887, 907 (Md. 1978). Damages may not be

awarded if the computation is based on "speculation or guesswork." *Atkinson Warehousing & Distrib. Inc. v. Ecolab, Inc.*, 99 F. Supp. 2d 665, 669 (D. Md. 2000) (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)). This Court concluded that Redner's could not recover any award for lost profits for two reasons. First, the Plaintiff failed to prove that Joppatowne was the cause of any loss. Second, the Plaintiff's damages calculation was based on speculation and guesswork, and thus could not be shown with reasonable certainty.

The Plaintiff agrees that it was required to meet the standard articulated by the Court of Appeals of Maryland in *Impala Platinum Ltd.*, but disagrees with this Court's finding that the standard was not met. This is an insufficient reason to justify granting a motion made pursuant to Rule 52 or Rule 59. Amendment of a court's findings is only warranted in very limited circumstances, such as the need to correct a clear error or to prevent manifest injustice. *Pac. Ins. Co.*, 148 F.3d at 403; s*ee also Solomon v. Dawson*, No. PWG-13-1953, 2013 WL 4747987, at *2 (D. Md. Sept. 3, 2013) ("a motion for reconsideration is not a license for the losing party's attorney to get a second bite at the apple.") (citation and internal quotation marks omitted). Judge Grimm of this Court recently noted the underlying reason for the circumscribed review of a court's own previous rulings:

> Once a court has issued its ruling, unless one of the specific grounds noted above can be shown, that should end the matter, at least until appeal. Were it otherwise, there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court— not to mention its patience.

*Solomon*, 2013 WL 4747987, at *2. In this case, the Plaintiff merely disagrees with this Court's findings, which is an insufficient reason for amendment. *Hutchinson*, 994 F.2d at

1082. Thus, the Plaintiff "has offered no justiciable reason to alter the previous findings of the Court." *Solomon*, 2013 WL 4747987, at *2.

Having concluded that there is no basis to amend the finding that the Plaintiff did not prove lost profits, this Court does note that the Plaintiff is entitled to nominal damages. Specifically, this Court has previously recognized that under Maryland law "it is well-settled that every injury to the rights of another imports damages, and if no other damages are established, the party injured is at least entitled to a verdict for nominal damages." *Planmatics, Inc.*, 137 F. Supp. 2d at 625; *see also Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.*, No. DKC-06-3177, 2012 WL 1247103, at *4-5 (D. Md. Apr. 12, 2012) (awarding nominal damages of $1.00 for each of five breaches of contract where plaintiff showed no measurable damages), *judgment amended by* 2012 WL 4324881 (D. Md. Sept. 18, 2012) (awarding attorneys' fees); *Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*, 725 F. Supp. 2d 513, 530 (D. Md. 2010) (awarding nominal damages of $1.00 for one breach of contract where no actual damages were proven). In this case, this Court found that two breaches of the restrictive use covenant occurred, but the Plaintiff failed to prove actual damages caused by those breaches. Under Maryland law, the Plaintiff is entitled to nominal damages for each breach. Accordingly, this Court will amend its findings of fact and conclusions of law, and will award to the Plaintiff nominal damages for the Defendant's breaches of the restrictive use covenant as to Lapp's Fresh Meats and All Fresh Quality Seafood & Produce in the amount of $1.00 for each breach, for a total award of $2.00.

In sum, because Rule 52 and Rule 59 do not permit a party to "raise arguments which could have been raised prior to the issuance of the judgment," nor is a party enabled to

"argue a case under a novel legal theory that the party had the ability to address in the first instance," *Pacific Ins. Co.*, 148 F.3d at 403; *Allcarrier Worldwide Services, Inc.*, 2011 WL 5995186, at *2, this Court concludes that Plaintiff has failed to meet its burden for the extraordinary remedy of reconsideration of a judgment after its entry. The Plaintiff merely reiterates arguments this Court previously rejected in its Memorandum Opinions of January 24, 2013 and July 11, 2013. The Plaintiff does not point to any controlling case law or evidence that was unavailable at the time of this Court's judgment that tends to show entitlement to relief. In other words, Plaintiff's motion does not raise any serious question about the correctness of this Court's final judgment. Accordingly, there is also no basis to hold a new trial, and the Plaintiff's request in this regard is DENIED.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Redner's Markets, Inc.'s Motion fails to satisfy the requirements of Rule 52 and Rule 59 of the Federal Rules of Civil Procedure. Accordingly, it is this 17th day of September, 2013, ORDERED that:

1. Plaintiff's Motion (ECF No. 185) is DENIED in all respects, with the exception that the Plaintiff is entitled to nominal damages; and

2. Plaintiff's Motion (ECF No. 185) is GRANTED to the extent the Defendant is ordered to pay to the Plaintiff nominal damages of $1.00 for each of the two breaches of the restrictive use covenant for which judgment has been entered in Plaintiff's favor, for a total award of $2.00; and

3. The Clerk of the Court transmit copies of this Memorandum Order to Counsel.

                                                                                    /s/
                                                      Richard D. Bennett
                                                      United States District Judge